2019 IL App (1st) 152604-U

No. 1-15-2604

Order filed November 1, 2019

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 16534 |
| | ) | |
| DEMARIUS BRIDGES, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, Presiding. |
| | ) | |
| | ) | |

_____

JUSTICE HALL delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's right to confrontation claim is forfeited where he failed to preserve for review the issue of whether the State proved by a preponderance of the evidence that a deceased witness's statements were admissible against defendant at trial under the forfeiture by wrongdoing doctrine; the deceased witness's videotaped statement was properly admitted under the forfeiture by wrongdoing doctrine; defendant failed to establish error sufficient for plain error review of his claim that his right to confrontation at the forfeiture by wrongdoing hearing was violated; and trial counsel was not ineffective for failing to preserve such issue.

¶ 2    Following a jury trial, defendant Demarius Bridges was convicted of first degree murder in the shooting death of Keith Slugg and attempted murder of Kimberly Harris, personal discharge of a firearm, and aggravated battery. He was sentenced to 55 years' imprisonment for murder and a consecutive 35-year term for attempted murder. Prior to trial, in a different incident, Harris was shot and killed.

¶ 3    On appeal, defendant contends that Harris's testimonial hearsay statements of identification were inadmissible because the State failed to prove by a preponderance of the evidence that he forfeited his right to confront Harris by wrongdoing and the trial court's error in admitting Harris's testimonial hearsay statements, which violated defendant's right to confrontation, prejudiced him and this matter should be remanded for a new trial.

¶ 4    Alternately, defendant contends that this court must reverse and remand for a new forfeiture by wrongdoing hearing because the admission of his brother's, Terry Bridges (Terry), testimonial hearsay statements at the hearing violated defendant's right to confrontation. He contends that admission of Terry's statements was plain error and that his attorney was ineffective for failing to object to their admission.

¶ 5    For the following reasons, we affirm.

¶ 6                           BACKGROUND

¶ 7    On August 28, 2011, at approximately 3:55 a.m., Harris and her boyfriend, Slugg, were engaged in sexual intercourse in the driver's seat of Slugg's parked car when shots rang out. At the time, Harris was on Slugg's lap in the driver's seat and facing the rear of the car. She looked up and saw defendant holding a gun near the rear passenger window of the car. Harris unsuccessfully attempted to dive into the passenger seat, but her foot was wedged between

Slugg's torso and the steering wheel. Harris was subsequently shot 15 times while Slugg was fatally shot. After the shooting stopped, Harris used her foot to honk the car's horn until police arrived and she was subsequently transported to the hospital by ambulance.

¶ 8      On September 7, 2011, defendant was arrested and charged with the first degree murder of Slugg and attempted murder of Harris. Prior to trial, on October 8, 2014, the State filed a motion *in limine* to "Admit Kimberly Harris's Statements as Dying Declarations and as Excited Utterances, Made During an Ongoing Emergency Situation, and Pursuant to the Doctrine of Forfeiture by Wrongdoing."

¶ 9                A. The State's Motion *in Limine t*o Admit Harris's Statements

¶ 10      In its initial motion, the State sought to admit the three statements that Harris made on August 28, 2011, immediately after the shooting. Subsequent to Harris's death on April 15, 2012, the State amended its motion to seek admission of all nine statements Harris made after the shooting. In support of its motion, the State presented Harris's statements and other evidence.

¶ 11                    1. Harris's Statements

¶ 12      Harris made her first statements to Chicago police officers Garza and Ponce, who were the first to arrive at the scene of the shooting. The officers were dispatched to the area in response to 911 calls and they heard the car's horn when they arrived. Harris was screaming and told Officer Garza that she could not breathe. Officer Garza asked Harris who did this, and she replied, "Debo." She then told Officer Garza that Debo's first name was "Demarius."

¶ 13      Shortly thereafter, Paramedics Basic and Roan arrived to the scene. Harris was lying across the front seat of the car, bleeding, and asking for help. Harris was coherent, and was able to provide her name and medical history to Paramedic Basic. During her ambulance transport to

the hospital, Harris told the paramedics that she did not want to die because she had a four-year-old daughter and twice said that "Debo" shot her. When they arrived to the hospital, Paramedic Basic heard Harris state to medical personnel that "Debo shot [her]."

¶ 14 Within 90 minutes of the shooting, Harris was prepped for surgery. Just prior to her surgery, between approximately 5:30 a.m. and 5:37 a.m., Sergeant Gallagher and Detective Hopps arrived at the hospital to interview Harris. Harris told them that she and Slugg were in the car when "Debo" walked up to the car and shot them. She told them that "Debo" was defendant's nickname and that she knew him from the area's housing complex.

¶ 15 On August 30, 2011, Detectives Egan and Vincent Alonzo interviewed Harris in the intensive care unit (ICU) of the hospital. The detectives showed Harris a photo array and she identified defendant. Harris stated that she had known defendant for 10 years, and he shot her from a distance of four- to five-feet away.

¶ 16 On August 31, 2011, Detectives Kennedy and Moreth, along with Assistant State's Attorney (ADA) Chevlin, interviewed Harris, who was still in ICU. Harris told them that after Slugg picked her up on August 28, 2011, they drove to the parking lot and began having intercourse. She heard a gunshot and "immediately" recognized defendant, who was holding a handgun outside of the rear passenger door. Harris stated that she heard gunfire, "felt pain" and threw herself down into the front passenger side seat. She heard Slugg say, "are you for real," and "that's it," before dying. Harris also stated that she had known defendant for 10 years, since she was 15 years old. Detective Kennedy showed Harris defendant's photo from the previous day's photo array and she again identified defendant.

¶ 17 On September 7, 2011, ASA Coakley and Detectives Kennedy and Moreth interviewed Harris at the hospital. Harris again described Slugg's murder and she again identified defendant in a photograph. Directly after her interview with ASA Coakley, Harris agreed to give a videotaped statement (her seventh statement). [1]

¶ 18 On October 4, 2011, Harris met with ASA Giancola for a pre-grand jury interview. Harris described the shooting similarly to her prior descriptions and again identified defendant in a photograph. ASA Giancola then showed Harris a copy of a previously signed line-up photo advisory form and the original photo array, both of which were signed by her sister on her behalf because her hands were incapacitated as a result of the shooting, and also played the videotaped interview Harris gave at the hospital. Harris indicated that the items were accurate just as she originally saw them and that she did not wish to amend her previous statements.

¶ 19 Later that same day, Harris testified under oath before a grand jury, again summarizing the shooting of August 28, 2011. She stated that within two to three minutes of Slugg's and her arrival at the parking lot, Harris heard gunshots and saw fire coming from a gun barrel. She looked up and saw defendant holding a gun. Harris stated she could see defendant clearly from outside the rear passenger window because of the lights in the parking lot. She also stated that defendant's nickname was "Debo."

¶ 20 Harris further testified that she felt pain, saw holes in her left arm, and attempted to move her body away from Slugg. She heard the shooting stop briefly, then start up again with less rapid shots. After the shooting stopped, she could see Slugg slumped over, and before he died, he

_____

[1] Harris's videotaped statement is not part of the record on appeal. However, both parties acknowledge that the videotape was admitted at defendant's trial in the current case as the People's Exhibit No. 17.

said, "you for real? You for real, G?" After the shooting stopped, Harris used her foot to honk the car horn and continued honking until police arrived.

¶ 21    During her grand jury testimony, Harris confirmed her previous statements to police, paramedics, medical personnel and the various ASAs who interviewed her. She reiterated that she told Officers Garza and Ponce that defendant shot her. She repeated the same statements to paramedics during her transport to the hospital and to police before her multiple surgeries while in the hospital.  Harris confirmed her prior identification of defendant from a photo array as the shooter, and that she had known defendant for 10 years. She reiterated her statement to Detectives Kennedy and Moreth and ASA Chevlin on August 31, 2011, and confirmed her oral and videotaped statements to ASA Coakley on September 7, 2011.

¶ 22                            2.  Other Evidence Proffered by the State

¶ 23    The State offered other evidence in support of its motion as outlined below.

¶ 24    Harris was shot and killed on April 15, 2012, while defendant was in jail awaiting trial. According to the State's motion, Harris contacted her cousin Conley English in April 2012, and told him that defendant's brother, Terry, offered her $20,000 to not testify against defendant. Harris agreed to the offer and worked with her cousin to arrange a meeting with Terry. On April 15, 2012, after he spoke to Terry and Tyrell Lewis, [2] and confirmed the agreement, English drove Harris to a designated area to exchange the agreed upon money. After English exited the car, a man approached them and shot Harris multiple times, killing her. Police later recovered the handgun used in Harris's death near the scene.  Ballistics tests later confirmed that the handgun

_____

[2] Some of the court proceedings refer to Tyrell as "Terrell."

was the same as one of the guns used in the August 28, 2011, shooting which killed Slugg and injured Harris.

¶ 25    Defendant, Terry and Lewis were charged with Harris's murder under a separate indictment. Terry made post-arrest statements to investigating detectives on September 20 and 21, 2012, namely that he conspired with defendant and Lewis to kill Harris. In his statements, Terry stated that defendant spoke with him and Lewis about killing Harris; the three agreed on the amount that defendant would pay Lewis for killing Harris; after Terry's visit with defendant, he believed that defendant would be released and would pay Lewis for killing Harris. These statements were not admitted against defendant at his trial for Harris's murder.[3]

¶ 26        3. State's Arguments in Support of its Motion to Admit Harris's Statements

¶ 27    The State sought to have Harris's nine statements to police, paramedics, hospital personnel and various ASAs admitted at defendant's trial because she was deceased and unavailable to testify.  Harris's nine statements were:  (1) statements made to Officers Garza and Ponce at the scene; (2) statements made to Paramedics Basic and Roan at the scene and in the ambulance,  and statements to hospital personnel overheard by Basic; (3) statements made 90 minutes after the shooting to Sergeant Gallagher and Detective Hopps in the emergency room prior to her first surgery; (4) statements and the photo identification made to Detectives Egan and Alonzo in ICU on August 30, 2011; (5) statements and the photo identification made to Detectives Kennedy and Moreth and ASA Chevlin in ICU on August 31, 2011; (6) statements made to ASA Coakley in ICU on September 7, 2011; (7) statements made to ASA Coakley in a

_____

[3] Defendant was later acquitted of Harris's murder in a separate bench trial, while Terry and Lewis were convicted of her murder.

videotaped statement on September 7, 2011; (8) statements made to ASA Giancola prior to the grand jury proceedings on October 4, 2011; and (9) her grand jury testimony on October 4, 2011.

¶ 28    The State contended that the first three statements, which were nontestimonial in nature, qualified as dying declarations, excited utterances, and statements made during an ongoing emergency situation.  The State noted that when the statements were made on August 28, 2011, Harris had been shot 15 times, struggled to speak, and thought she was going to die.

¶ 29    The State also contended that all nine of Harris's statements were admissible at trial under the doctrine of forfeiture by wrongdoing. The State argued that defendant coordinated with Terry and Lewis to kill Harris, and but for his actions, she would have been available to testify and be cross-examined at defendant's trial.

¶ 30    To support this theory, the State proffered the following evidence that defendant was responsible for Harris's absence: (1) various phone calls between Lewis, Terry and English; (2) video footage showing Terry's vehicle arriving near the scene of Harris's shooting death; (3) Terry's visits to defendant in jail in the days before and after Harris's murder; (4) Lewis' visit to defendant 11 days before Harris's murder; and (5) the gun used in Harris's murder was one of the guns used in the August 28, 2011, shooting of Slugg and Harris.

¶ 31    The State also presented Terry's post-arrest statements on September 20 and 21, 2012. The State argued that, although these statements were not admissible in defendant's trial for Harris's murder, they were admissible against defendant in the forfeiture by wrongdoing hearing.

¶ 32    Lastly, the State presented a written statement from English, which outlined his conversations with Harris about Terry's offer, and the arrangements they made to meet Terry on the day she died.

¶ 33                              4. Defendant's Response to the State's Motion

¶ 34    Defendant filed a written response to the State's motion to admit Harris's initial three statements; however, he did not amend his response to address the State's amended motion which added the forfeiture by wrongdoing arguments.

¶ 35    In his response, defendant contended that when the first statements were made, Harris was alert and her statements did not reflect a belief that her death was imminent because Paramedic Basic told Harris that she was not going to die. Defendant asserted that Harris's statements were unreliable because the close range of the bullets would have distorted her vision and numbed her senses. Defendant also contended that Harris's statements were not excited utterances because officers arrived several minutes after the shooting occurred and the emergency had subsided. Similarly defendant contended that the first three statements were not made as part of an ongoing emergency because when the police and paramedics arrived at the scene, there was neither a shooter nor a hot pursuit situation that constituted an emergency.

¶ 36                              5. The Forfeiture by Wrongdoing Hearing

¶ 37    A hearing was held on the State's motion on March 20, 2015. The State proffered its evidence as to the admissibility of Harris's and Terry's statements to the court without objection.

¶ 38    During his argument, defendant contended that the State produced no witnesses, phone conversations, nor records that proved he participated in or intended to cause Harris's murder. Defendant also argued that Terry's statements as a co-conspirator was not competent evidence against defendant because Terry had a motive to lie in his post-arrest statements to officers.

¶ 39    Before issuing a ruling, the trial court requested additional materials from the State, which were filed in an addendum on March 23, 2015. The additional materials were: (1) a

transcript from a separate proceeding on June 30, 2014,[4] in which Detective Egan testified as to Harris's August 30, 2011, statement; (2) Officer Garza's written notes from Harris's initial statement on August 28, 2011; (3) a partial transcript of Harris's statement to ASA Chevlin on August 31, 2011; and (4) the transcript of Harris's grand jury testimony on October 4, 2011.

¶ 40                                6.  The Trial Court's Ruling

¶ 41    On March 27, 2015, the trial court issued its ruling as to the admissibility of Harris's statements at defendant's trial as follows.

¶ 42                                a.  The First Three Statements

¶ 43    The trial court found that Harris's first three statements sufficiently satisfied the elements for a dying declaration because: (1) Harris, as the declarant, was unavailable because of her death; (2) defendant was separately on trial for her murder; (3) and Harris was under the belief that her death was imminent when she made those statements. The trial court noted that Harris spoke swiftly, and consistently expressed fear that she was going to die. Regarding Harris's third statement to police at the hospital just before her surgery, the court stated that although the emergency had passed, she persisted in trying to tell police and hospital personnel the information again under the belief that her death was imminent. The court found each of the three statements admissible as a dying declaration.

¶ 44    The court also found that Harris's statements were admissible as excited utterances because even after 90 minutes, Harris was aware that she had been shot many times, she witnessed her companion's shooting, and there was no self-interest motivation in her statements.

---

[4] The State does not specify the type of proceeding during which Detective Egan testified.

¶ 45    The court further found that they were non-testimonial and admissible under the ongoing emergency hearsay exception because when Harris made them, defendant had not yet been arrested, and this information was provided to aid officers in an ongoing emergency.

¶ 46                    b. Forfeiture by Wrongdoing – All Nine Statements

¶ 47    The trial court then addressed whether all nine statements were admissible under the doctrine of forfeiture by wrongdoing under Illinois Rule of Evidence 804(b)(5) (eff. Jan. 1, 2011), and under statute, codified at 725 ILCS 5/115-10.7 (West 2014), which has since been repealed by Pub. Act 99–243, § 5 (eff. Aug. 3, 2015). [5]

¶ 48    The trial court found that the State offered sufficient evidence in support of admissibility under this doctrine.  The State offered evidence of: (1) Terry's post-arrest statements made to police on September 20 and 21, 2012; (2) defendant's arrest on September 7, 2011, for Slugg's murder and Harris's attempted murder; (3) Harris's death in April 2012, seven months after defendant's arrest; (4) English's statement that Terry contacted him to offer Harris money to not testify; (5) Terry's request to meet Harris in person before giving English any money; and (6) Lewis's fatal shooting of Harris.  The court also noted that ballistics testing established that one of the handguns used in the 2011 shooting was the same gun that killed Harris on April 15, 2012.

¶ 49    In light of this evidence, the trial court found that the State established by a preponderance of the evidence that defendant acted under the doctrine of forfeiture by wrongdoing in procuring Harris's absence. The trial court concluded that all nine statements were admissible at defendant's trial on that basis, and the case proceeded to trial.

¶ 50                    B.  Defendant's Jury Trial

_____

[5] The State requested that the trial court admit Harris's statements under both the Illinois Rules of Evidence and section 115-10.7.

¶ 51    The case proceeded to a jury trial where the State presented witnesses who testified to Harris's out-of-court statements and presented Harris's videotaped statement to the jury. Investigator Ryan Smith testified that he photographed the scene on August 28, 2011, found Slugg's deceased body in the car and recovered 29 shell casings nearby and in the car from two guns. Forensic testing revealed that there were no latent prints found on the discharged cartridges and the comparison prints did not match defendant. The State entered its exhibits into evidence and rested.

¶ 52    Following the denial of defendant's motion for a directed verdict, defendant's former girlfriend, Jonell Reed, testified that defendant was home with her sleeping on the night of the shooting; Reed also stated that she did not know anyone that called defendant "Debo."

¶ 53    Defendant's mother, Sharnetta Dodson, testified that many people confused her sons Terry and Demarius. Dodson shared photographs taken in 2006 of her sons on the stand that were offered as exhibits. Dodson acknowledged that Terry was six feet three inches, and Demarius was five feet nine inches tall.

¶ 54    Defendant testified that in August 2011, he lived with his girlfriend, and knew Harris from the neighborhood. He "knew of" Slugg, but testified that he did not interact with him. On August 27, 2011, he was at his mother's house from 8 p.m. until 11 p.m. and went home between 11:45 p.m. and 12 a.m. He stated he went to bed around 3 a.m. and denied that he killed Slugg or injured Harris. On cross-examination, defendant testified that he was five feet nine inches tall and that Terry weighed 20 to 30 more pounds than him and was six feet three inches tall. Defendant also testified that people called him "Debo," and Harris would have known that nickname.

¶ 55    The jury found defendant guilty of first degree murder, attempted murder, in which he personally discharged a firearm, and aggravated battery. Defendant was subsequently sentenced to consecutive 55-and 35-year prison terms. His motion for a new trial was denied and this timely appeal followed.

¶ 56                                    ANALYSIS

¶ 57    On appeal, defendant contends that six of Harris's testimonial hearsay statements of identification were inadmissible because the State failed to prove by a preponderance of the evidence that he forfeited his sixth amendment (U.S. Const., amend. VI) right to confront her. He argues that the trial court's error in admitting these testimonial hearsay statements prejudiced him and this matter should be remanded for a new trial.  Defendant acknowledges that this issue was not raised in his post-trial motion, but contends that it can be reviewed because it is a constitutional error.

¶ 58    Alternately, defendant contends that this court should reverse and remand for a new hearing on the State's motion *in limine* because the admission of Terry's testimonial hearsay statements at the forfeiture by wrongdoing hearing violated his right to confrontation. Acknowledging that his trial counsel failed to address the admissibility of Terry's statements and thus did not preserve this issue for review, defendant nevertheless contends that this issue is reviewable under plain error. Defendant also contends that his trial counsel was ineffective for failing to contest the admissibility of Terry's statements at the forfeiture by wrongdoing hearing.

¶ 59                    A.  Admissibility of Harris's Statements

¶ 60    Defendant first contends that admitting Harris's statements violated his right to confrontation and further that the State failed to prove that defendant forfeited his right to

confront Harris by a preponderance of the evidence. While defendant does not disagree that Harris's first two statements at the scene were admissible as excited utterances, dying declarations and statements made during an ongoing emergency, he takes issue with statements three through nine, which he categorizes as testimonial in nature. He argues that Harris's third statement to the detectives at the hospital was not a dying declaration, excited utterance or statement made during an ongoing emergency because the emergency had passed. Defendant further argues that statements three through nine made to various officers and ASAs were testimonial and part of the State's investigation. He contends that the trial court's admission of Harris's testimonial hearsay statements prejudiced him and requests that this Court remand for a new trial.

¶ 61                                     1. Forfeiture of the Issue on Appeal

¶ 62    As noted above, defendant acknowledges that this issue was not raised in his post-trial motion, but contends that it can be reviewed because he fully responded to and litigated the State's motion at the pretrial hearing. Defendant additionally argues that this issue is reviewable because his constitutional rights are implicated and the trial court's error of allowing the State to present these statements without proof by a preponderance of the evidence at the forfeiture by wrongdoing hearing was not harmless. The State does not respond to whether this issue is forfeited; instead the State only responds that constitutional issues need not be addressed if the issue can be resolved under state hearsay rules. See *People v. Perkins*, 2018 IL App (1st) 133981, ¶51. Our threshold inquiry is whether defendant has forfeited review of this issue on appeal.

¶ 63    To preserve an issue for review, a party ordinarily must raise it at trial and in a written post-trial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010); *People v. Cregan*, 2014 IL 113600, ¶ 15. This requires that a defendant specifically object at trial and raise the specific issue again in the post-trial motion. *People v. Woods*, 214 Ill. 2d 455, 471 (2005); *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 75. Failure to preserve an alleged error for review is a procedural default. *People v. Rivera*, 277 Ill. App. 3d 811, 8181 (1996).

¶ 64    Where errors or defects affect substantial rights, denies the accused a fair and impartial trial, or where the evidence is closely balanced, a reviewing court may choose to consider the issue. *People v. Ward*, 154 Ill. 2d 272, 294 (1992). Additionally, as our supreme court noted in *Cregan*, there are three types of claims not subject to forfeiture for failing to file a post-trial motion: (1) constitutional issues that were properly raised at trial and may be raised later in a postconviction petition; (2) challenges to the sufficiency of the evidence; and (3) plain errors. *Cregan*, 2014 IL 113600, ¶ 15 (citing *Enoch*, 122 Ill. 2d at 190).

¶ 65    Defendant appears to argue that the constitutional issues exception to forfeiture applies to allow appellate review of his sixth amendment issues. The constitutional-issue exception was described by our supreme court in *Cregan* as follows:

"[T]he constitutional-issue exception recognized in *Enoch* is based primarily on the interest of judicial economy. The Post-Conviction Hearing Act provides a mechanism for criminal defendants to assert that a conviction or sentence resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2008). Postconviction proceedings

permit inquiry into constitutional issues that were not, and could not have been, adjudicated on direct appeal. [Citation.] If a defendant were precluded from raising a constitutional issue previously raised at trial on direct appeal, merely because he failed to raise it in a posttrial motion, the defendant could simply allege the issue in a later postconviction petition. Accordingly, the interests in judicial economy favor addressing the issue on direct appeal rather than requiring a defendant to raise it in a separate postconviction petition." *Cregan*, 2014 IL 113600, ¶ 18.

¶ 66 The *Burnett* court found, however, that the defendant's sixth amendment issue did not fall into this exception because, as the *Cregan* court explained, this exception covers only "constitutional issues that were properly raised at trial" and where defendant's only omission was failing to raise it in a posttrial motion. *Burnett*, 2015 IL App (1st) 133610, ¶ 79, (quoting *Cregan*, 2014 IL 113600, ¶ 18).

¶ 67 Here, as noted previously, defendant acknowledges that he did not object to the admission of Harris's statements at trial, with the exception of her videotaped statement and grand jury testimony, nor was any issue related to Harris's statements raised in his post-trial motion. Defendant does note in passing in his opening brief that the issue of violation of his confrontation rights was fully litigated during the pretrial proceedings. However, a defendant cannot rely only on his pretrial opposition to a State's motion *in limine* to admit evidence as a means to preserve the issue for appeal. *People v. Denson*, 2013 IL App (2d) 110652, ¶ 9. We conclude that defendant has forfeited his arguments regarding the admissibility of Harris's complained-of statements, except as outlined below.

¶ 68    Nor does defendant argue that the issue is reviewable under plain error or ineffective assistance of counsel; instead defendant contends that because the trial court's error led to a violation of his right to confront witnesses, his conviction can only be affirmed if the error was harmless beyond a reasonable doubt, citing *People v. Patterson*, 217 Ill. 2d 407, 428 (2005), in support.  Defendant's argument is misplaced as *Patterson* did not involve forfeiture of appellate review.

¶ 69    As such, we conclude that defendant's issues related to statements three through six and eight (made to various police officers, detectives, and ASAs) are not reviewable on appeal as defendant failed to properly preserve the review of those issues by failing to object at trial to the admission of those statements and failing to include the issue in his post-trial motion.  *Denson*, 2013 IL App (2d) 110652, ¶ 10.

¶ 70    As to statement seven, Harris's videotaped statement, the record indicates that defendant objected to the admission of the videotape into evidence and its publication to the jury.  Thus, review of this statement potentially falls under an exception to forfeiture noted by *Cregan*, namely that it involves a constitutional issue raised at trial and could be later raised in a postconviction petition.  *Cregan*, 2014 IL 113600, ¶ 15.  An examination of the record reveals that one of defendant's objections to admission of the video tape was based on constitutional grounds of his inability to cross-examine Harris, thus its admissibility based on forfeiture by wrongdoing is reviewable under *Cregan*.

¶ 71    Finally, as to Harris's grand jury testimony, statement nine, the record indicates that defendant generally objected to its admission into evidence, however no specific grounds for the

objection was stated. Thus, any review related to this statement on confrontation grounds is waived. *People v. Lewis*, 165 Ill. 2d 305, 336 (1995).

¶ 72 In summary, defendant has waived consideration of whether the admission of Harris's statements to members of the police department and various ASAs are forfeited for review. Defendant's issue of whether the admission of Harris's videotaped statement under the forfeiture-by-wrongdoing doctrine violated his constitutional right to confrontation will be reviewed.

¶ 73 2. Admissibility of Harris's Videotaped Statement under Forfeiture by Wrongdoing

¶ 74 Defendant contends that the State failed to prove that he intended to cause Harris's unavailability for trial and thus forfeited his right to confrontation by a preponderance of the evidence. He argues that the circumstantial evidence presented at the hearing failed to establish that he was connected to the shooting that killed Harris and prevented her from testifying at trial, especially when he was acquitted of her murder. Defendant notes that his brother, Terry, and Lewis were convicted of Harris's murder. According to defendant, the only evidence presented by the State was his relationship with his brother, familial jail visits between the brothers and Terry's inadmissible, testimonial, hearsay statements, which deprived the trial court of any opportunity to assess Terry's credibility. Defendant maintains that the State failed to present any witnesses to support its allegations that he acted, through his brother and others, with the intent to procure Harris's absence from trial and instead the State proceeded by way of proffer.

¶ 75 The sixth amendment to the United States Constitution provides that, at all criminal prosecutions, the accused shall have the right "to be confronted with the witnesses against him." U.S. Const., amend. VI. The doctrine of forfeiture by wrongdoing is a common law doctrine. *People v. Nixon*, 2016 IL App (2d) 130514, ¶ 48. Under this doctrine, one who obtains the

absence of a witness by wrongdoing forfeits the constitutional right to confrontation. *Nixon*, 2016 IL App (2d) 130514, ¶ 48.

¶ 76　Illinois Rule of Evidence 804(b)(5) provides that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness," is "not excluded by the hearsay rule." Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011); *People v. Zimmerman*, 2018 IL App (4th) 170695, ¶ 97. The forfeiture by wrongdoing rule is a codification of the common law doctrine. *People v. Hanson*, 238 Ill. 2d 74, 97 (2010); *Zimmerman,* 2018 IL App (4th) 170695, ¶ 97. This doctrine is an exception to the hearsay rule and extinguishes confrontation clause rights. *Zimmerman,* 2018 IL App (4th) 170695, ¶ 97.

¶ 77　The doctrine has two criteria or factors that must be satisfied for the admission of hearsay statements under the rule: (1) that the party against whom the statement is offered has engaged or acquiesced in wrongdoing, and (2) that such wrongdoing was intended to, and did, procure the unavailability of the declarant as a witness. *People v. Peterson*, 2017 IL 120331, ¶ 32. As long as the declarant's statements are relevant and otherwise admissible, statements admitted under the forfeiture by wrongdoing doctrine need not reflect additional indicial of reliability. *Hanson*, 238 Ill. 2d at 99. Active participation or engagement or the personal commission of the crime is not required. *People v. Hampton*, 406 Ill. App. 3d 925, 940 (2010).

¶ 78　The State's burden of proof is by a preponderance of the evidence. *Nixon*, 2016 IL App (2d) 130514, ¶ 49.

¶ 79　Contrary to defendant's assertions, our supreme court has held that the forfeiture by wrongdoing doctrine may be applied to admit both testimonial and nontestimonial statements.

*People v. Hanson*, 238 Ill. 2d 74, 97 (2010). Moreover, a reviewing court will not reverse the trial court's ruling on a motion *in limine* absent an abuse of discretion. *People v. Hanson*, 238 Ill. 2d 74, 96 (2010); *Nixon*, 2016 IL App (2d) 130514, ¶ 50. However, as to whether defendant was denied his right to confront the witnesses against him, our review is *de novo*. See *People v. Leach*, 2012 IL 111534, ¶ 64; *Nixon*, 2016 IL App (2d) 130514, ¶ 50.

¶ 80    After reviewing the record in this case, we cannot say that defendant's sixth amendment right to confront Harris was violated, because the trial court correctly determined that Harris's videotaped statement to ASA Coakley was admissible under the forfeiture by wrongdoing doctrine.

¶ 81    Without mention of Terry's statements, which we will discuss below, we believe that the State established by a preponderance of the evidence that defendant engaged in and acquiesced in conduct that was intended to, and did, procure Harris's unavailability.

¶ 82    First, in addition to Harris's first two statements at the scene which defendant does not contest were properly admitted as dying declarations, excited utterances and statements made during an ongoing emergency, the State presented evidence of Harris's shooting death on April 15, 2012, by Terry and Lewis while defendant was in jail awaiting trial. It bears noting that Harris was the sole witness to the August 28, 2011, shooting who could tie defendant to the shooting. The State also presented evidence of visits between defendant and his brother Terry just before and after Harris's death. There was also evidence that Lewis visited defendant shortly before Harris's murder.

¶ 83    Next, the State presented the statement of English, Harris's cousin. English's statement indicated that Harris contacted him in April 2012 and told him that Terry offered her $20,000 to

not testify against defendant. Harris agreed to the offer and worked with her cousin to arrange a meeting with Terry. On April 15, 2012, after he spoke to Terry and Lewis and confirmed the agreement, English drove Harris to a designated area to exchange the agreed upon money. After English exited the car, a man approached them and shot Harris multiple times, killing her. Police later recovered the handgun used in Harris's death near the scene, which was confirmed by ballistics tests to be one of the guns used in the August 28, 2011, shooting which killed Slugg and injured Harris.

¶ 84   We cannot say that the trial court's exercise of discretion has been frustrated by an erroneous rule of law.  See *Hampton*, 406 Ill. App. 3d at 942.  Because the State established by a preponderance of the evidence that defendant engaged in or acquiesced in conduct intended to make Harris unavailable to testify at trial, defendant forfeited his right to claim a confrontation clause violation of the admission of Harris's videotaped statement under the forfeiture by wrongdoing doctrine.

¶ 85   Even though we have already concluded that defendant forfeited review of Harris's other statements by failing to properly preserve them for review, we would nevertheless find that they were also properly admitted under the forfeiture by wrongdoing doctrine for the reasons stated above.

¶ 86   It follows then that because Harris's statements were properly admitted, defendant was not prejudiced by their admission against him at trial.

¶ 87                    B. Admissibility of Terry's Statements at the Pretrial Hearing

¶ 88   As stated previously, defendant alternately contends that this court should reverse and remand for a new hearing on the State's motion *in limine* because the admission of Terry's

testimonial hearsay statements at the forfeiture by wrongdoing hearing violated his right to confrontation. Acknowledging that his trial counsel failed to address the admissibility of Terry's statements and thus did not preserve this issue for review, defendant nevertheless contends that this issue is reviewable under plain error. Defendant also contends that his trial counsel was ineffective for failing to contest the admissibility of Terry's statements at the forfeiture by wrongdoing hearing. Defendant acknowledges that this issue is a matter of first impression for both the United States Supreme Court and Illinois courts.

¶ 89 To preserve an issue for review, a party ordinarily must raise it at trial and in a written post-trial motion. *Enoch*, 122 Ill. 2d at 186; *Thompson*, 238 Ill. 2d at 611-12 (2010). The failure to do so results in forfeiture. *People v. Wilson*, 2017 IL App (1st) 143183, 22.

¶ 90 We first note that Terry's statements were not used against defendant during his trial for the August 28, 2011, shooting that killed Slugg and injured Harris. The State proffered Terry's statements at the forfeiture by wrongdoing hearing and defendant's trial counsel did not object. Nor was the issue of the admission of Terry's statements at the pretrial hearing raised in defendant's motion for new trial. Thus, this issue is waived. *Enoch*, 122 Ill. 2d 186.

¶ 91 Defendant concedes that he did not preserve this issue but contends that it is reviewable under plain error because the evidence at the forfeiture by wrongdoing hearing was closely balanced and the erroneous admission of Terry's testimonial hearsay statements violated his right to confront Terry.

¶ 92 The plain error doctrine allows a reviewing court to address defects affecting substantial rights if the evidence is closely balanced or if fundamental fairness so requires rather than finding the claims waived. *People v. Woods*, 214 Ill. 2d 455, 471 (2005). A defendant raising a

plain error argument bears the burden of persuasion. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 93    To establish plain error, a defendant must first show that a clear or obvious error occurred (T*hompson*, 238 Ill. 2d at 613), and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error (*People v. Naylor*, 229 Ill. 2d 584, 593 (2008))  or that the error was sufficiently grave that it deprived defendant of a fair trial (*People v. Herron*, 215 Ill. 2d 167, 187 (2005)).

¶ 94    In this case, defendant argues that the trial court committed reversible error when it allowed the State to use Terry's hearsay statements as evidence in the forfeiture by wrongdoing hearing.

¶ 95    The first step in a plain error review is to determine whether the trial court committed error, and the burden is on defendant to establish that an error occurred.  *Thompson*, 238 Ill. 2d at 613.  Accordingly, we begin by considering whether the trial court improperly allowed the State to use Terry's statements against defendant at the forfeiture by wrongdoing hearing.

¶ 96    As noted previously, contrary to defendant's assertions, our supreme court has held that the forfeiture by wrongdoing doctrine may be applied to admit both testimonial and nontestimonial statements.  *Hanson*, 238 Ill. 2d at 97.  Additionally, as noted by the State, our supreme court and the United States Supreme Court have ruled that hearsay evidence is admissible at a forfeiture by wrongdoing hearing.  See *Davis v. Washington*, 547 U.S. 813, 833 (2006); *Peterson*, 2017 IL 120331, ¶ 44; *People v. Stechly*, 225 Ill. 2d 246, 278 (2007); Ill. R. Evid. 104(a), 804(b)(5) (eff. Jan. 1, 2011).

¶ 97    Thus, defendant's assertion that it was error for the State to use Terry's statements against him at the forfeiture by wrongdoing hearing is incorrect. Defendant has not cited, nor have we found, any case to support his argument that he had a right to confrontation at the forfeiture by wrongdoing hearing. Defendant instead wishes to liken this situation to a hearing on a motion to quash and suppress, suggesting that the right to counsel and the confrontation right attaches in a suppression hearing because it is a "critical stage of prosecution;" a forfeiture by wrongdoing hearing is equally a critical stage of prosecution.

¶ 98    We decline to extend a right to confrontation to a forfeiture by wrongdoing hearing. It was not error for the trial court to consider hearsay evidence in making its determination at the forfeiture by wrongdoing hearing under the current case law of the Supreme Court and this state. In the absence of error, plain error review does not apply, and defendant's claim of error is forfeited.

¶ 99    Defendant also contends that his trial counsel was ineffective for failing to preserve this issue for review.

¶ 100   In determining whether a defendant was denied the effective assistance of counsel, this court applies the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), as adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687; *People v. Gabriel*, 398 Ill. App. 3d 332, 346 (2010). More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a " 'reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.' " *Strickland*, 466 U.S. at 694; *Gabriel*, 398 Ill. App. 3d at 346. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *Gabriel*, 398 Ill. App. 3d at 346.

¶ 101 Here, we have already concluded that the use of Terry's hearsay statements against defendant at the forfeiture by wrongdoing hearing was not error. It follows then that trial counsel's failure to object at the hearing or raise this issue in defendant's post-trial motion was not ineffective assistance. Defendant's claim is without merit.

¶ 102 The procedural default of defendant's claim will stand. *People v. Keene*, 169 Ill. 2d 1, 17 (1995).

¶ 103                                    CONCLUSION

¶ 104 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 105 Affirmed.