2021 IL App (1st) 190881
No. 1-19-0881
Opinion filed December 6, 2021

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 17957 |
| SYLVESTER HAYES, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Stanley J. Sacks, |
| | ) | Judge, presiding. |
| | ) | |

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     A jury found Sylvester Hayes guilty of first degree murder for the shooting death of
Frederick Giles. The trial court sentenced him to 55 years in prison, and we affirmed his conviction
and sentence on direct appeal. See *People v. Hayes*, 2017 IL App (1st) 153213-U. Central to
Hayes's appeal was a challenge to the sufficiency of the evidence based on the alleged deficiencies
in the testimony of six eyewitnesses to Giles's murder. *Id.* ¶¶ 37-48. Hayes cited "scientific
studies" related to the phenomenon of weapon focus and the lack of correlation between witness

certainty and accuracy. *Id.* ¶¶ 42, 44. We declined to consider these studies largely because "Hayes did not attempt to call an expert witness at trial regarding the psychology of witness identifications." *Id.* ¶ 44 (citing *People v. Lerma*, 2016 IL 118496).

¶ 2 Picking up on the record deficiencies we highlighted, Hayes filed a postconviction petition, arguing trial counsel's ineffectiveness for failing to investigate or call an expert witness to opine on the weaknesses in eyewitness testimony that would not be apparent from cross-examination. He alleged counsel knew, at minimum, about the science related to weapon focus and did nothing to investigate further. And counsel's insufficient investigation prejudiced him because credibility of the eyewitnesses was essential for the State to overcome Hayes's alibi defense. The trial court dismissed the petition in a written order, reasoning that trial counsel conducted "meaningful adversarial testing" and so could not have performed deficiently. The trial court said nothing about prejudice.

¶ 3 We reverse, finding Hayes's claim of ineffective assistance arguable. Our decision on direct appeal indicated expert testimony may have bolstered Hayes's argument that the eyewitnesses were either distracted by the presence of a weapon or that the jury should not have been confident in the witnesses' certitude. And, though all the witness identifications were sufficient to uphold Hayes's conviction under an exceedingly deferential standard of review, none was pristine. Thus, we find it arguable that an expert on eyewitness identifications could have undermined their credibility to the extent that a reasonable probability exists for a different outcome.

¶ 4 We remand for further proceedings consistent with the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)).

¶ 5                                         Background

¶ 6      We extensively recounted the facts in our order on direct appeal, including detailed testimony about the eyewitnesses' direct and cross-examinations. *Hayes*, 2017 IL App (1st) 153213-U, ¶¶ 4-35. We briefly summarize those facts and recount additional detail essential to our analysis.

¶ 7      Six eyewitnesses saw an offender shoot Giles. Each described brief periods of observation. Rivianna Gilmore, who was walking with Giles, saw the offender for less than one minute and looked directly at him for one or two seconds. Faydra Brookshire, who saw the offender from inside her apartment at a distance of five feet, got a look at his profile for about five seconds. Kevin Neely, who saw the offender from his apartment, got a direct look at his face for "less than a second." Jasmine Bell, who saw the offender from her fourth story window, viewed the offender for about 30 seconds as he moved from shooting Giles to getting into a car. Edward Reed, in his apartment, got a "full frontal" view of the offender's face for "four or five seconds." Finally, Officer Irene Singleton saw the shooting from her car and, though she never saw the offender's face from the front, got a view of both sides of the offender's face for three seconds on each side.

¶ 8      The descriptions of the offender also varied. Few agreed on the offender's height. Gilmore thought the offender was 5 feet, 6 inches or 5 feet, 7 inches; Reed and Singleton thought he was between 5 feet, 8 inches and 5 feet, 10 inches; Bell believed he was 6 feet; and Neely could only say he was shorter than 5 feet, 11 inches. Two witnesses could not agree about the presence of facial hair—Neely said the offender had a little mustache, but Reed said he had no facial hair. Gilmore thought the offender had a "square head," but Singleton found distinctive the "round shape" of the offender's head.

¶ 9     They agreed on a few points. Everyone who described the offender's age thought he was young, with Singleton guessing between 26 and 29 years. Everyone who described the offender's skin tone—Gilmore, Neely, and Reed—said he had a dark complexion. And everyone who described the offender's clothes—Gilmore, Brookshire, Neely, and Singleton—said he had on all dark or all black clothes.

¶ 10    Four of the witnesses testified about seeing a gun. Brookshire and Singleton commented that the offender was holding a gun. Gilmore described a black gun that one would need two hands to hold. Neely described a gun with a "clip that was hanging out of it," and Reed described a "semi-automatic" gun with an extended clip.

¶ 11    All the witnesses identified Hayes in some format after the offense. Twenty-three days after the shooting, Gilmore went to the police station and identified Hayes's picture in a photo lineup of 55 photographs. A day after Gilmore's identification, Brookshire, Neely, Bell, Reed, and Singleton went separately to the police station and viewed a live lineup. They all identified Hayes as the offender with the gun.

¶ 12    No physical evidence connected Hayes to the shooting. Hayes testified that he was with his friend, Marcus Gilbert, and his friend's mother, Nicole Smallwood, at the time of the shooting. The three testified they were at a party between 3 and 4 p.m. until 11 p.m. or midnight. The shooting took place at about 7 p.m. Both Smallwood and Gilbert testified that Hayes remained with them at the party and never left.

¶ 13    Based on this evidence, we affirmed Hayes's conviction on direct appeal, finding the discrepancies in identification were for the jury to resolve. *Id.* ¶ 47. We rejected Hayes's claim about weapon focus and that scientific studies show a weak correlation between certainty and

accuracy. *Id.* ¶ 42 (weapon focus); *id.* ¶ 44 (witness certainty). Because Hayes had failed to call an expert, we declined to consider the studies even though they "may call into question the reliability of eyewitness identifications." *Id.* ¶ 44.

¶ 14 Hayes then filed a postconviction petition arguing his trial counsel was ineffective for failing to call an expert in eyewitness identifications. He alleged that the State's case at trial was based on witnesses who all had "fleeting opportunity[ies]" to see the offender during a "chaotic and violent" encounter. Hayes also cited cases referring to the "scientific consensus" on weapons focus along with two scientific studies. Hayes alleged "this knowledge was available" to trial counsel and that counsel was ineffective for failing to "seek expert testimony." The trial court summarily dismissed Hayes's petition. The court primarily relied on counsel's trial strategy, finding that counsel "vigorously cross examined the State's eyewitnesses regarding their identifications," rendering Hayes's claim affirmatively rebutted by the record.

¶ 15                                    Jurisdiction

¶ 16 Before we discuss the merits of Hayes's argument, we must first assure ourselves that we have appellate jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Two irregularities warrant our attention. First, in the notice of appeal, the judgment being appealed and the date of the judgment do not match. Second, the clerk file-stamped the notice of appeal more than 30 days after the trial court entered judgment. We find neither defect precludes exercise of jurisdiction.

¶ 17 The notice of appeal, which Hayes drafted, describes the judgment he is appealing as "post-conviction petition denial." The trial court entered its order dismissing Hayes's petition on March 8, 2019, but Hayes's petition lists the date of the trial court's judgment as March 15, 2019. We construe notices of appeal liberally, and if the defect is one of form, not substance, failure to strictly

comply with the requirements for a notice of appeal is not fatal to jurisdiction. *Id.* at 104-05. Here, we can easily discover the source of the error and confirm that Hayes's error is one of form. The circuit clerk sent notice of the trial court's judgment to Hayes, and the notice is dated March 15, 2019. It appears Hayes interpreted the date of the notice as the date of the trial court's judgment. But the notice references the March 8, 2019, order and incorporates it by reference. We see no way the State could have been prejudiced where the only judgment referenced by the clerk's notice is the March 8 judgment dismissing Hayes's postconviction petition. See *id.* (unfairness to prevailing party is overarching concern).

¶ 18 Similarly, the filing date of the notice of appeal does not defeat jurisdiction. A *pro se* incarcerated litigant timely files their notice of appeal if the notice is placed in the institutional mail within 30 days of the judgment appealed. See *People v. Shines*, 2015 IL App (1st) 121070, ¶ 31. To rely on the "mailbox rule," the litigant must include an affidavit complying with section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2020)) and stating the time and place of deposit in the mail and the complete address for delivery. *Cf. Shines*, 2015 IL App (1st) 121070, ¶ 33; see also Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). Hayes's notice of appeal includes a certificate of service swearing under penalty of perjury that he placed his notice in the institutional mail at Stateville Correctional Center on April 3, 2019. The certificate of service is notarized and includes the address of the Cook County circuit clerk's office.

¶ 19 Were we to have any doubt that Hayes timely mailed his notice of appeal, the envelope dispels it. The envelope attached to the notice of appeal shows postal service processing on April 5, 2019. See *People v. Maiden*, 2013 IL App (2d) 120016, ¶¶ 11-13 (discussing split in authority on whether postmark is competent evidence of proof of mailing).

¶ 20    We have jurisdiction over Hayes's appeal where he timely placed his notice of appeal in the institutional mail and any defects on the notice were of form, not substance.

¶ 21                                    Analysis

¶ 22    Hayes argues the trial court erred in dismissing his postconviction petition at the first stage because he made an arguable claim that trial counsel was ineffective for failing to investigate and call an expert in eyewitness identifications. He claims expert evidence (i) would have been "critical" to undermining the six eyewitnesses, (ii) would have called into question the identification procedures used by police, and (iii) would have bolstered his alibi defense. The State responds that refraining from calling an expert was a valid trial strategy given counsel's "question[ing] every identification witness, and thoroughly argu[ing] misidentification." Alternatively, the State contends that expert testimony would not have impacted the outcome because the eyewitnesses "were consistent, credible, and corroborated each other." We agree with Hayes. The State's arguments about trial strategy are better suited for later stages of postconviction proceedings, and its prejudice analysis ignores both the low pleading bar for first stage postconviction petitions and the imperfections in the eyewitness identifications.

¶ 23    The Post-Conviction Hearing Act provides defendants with a vehicle to allege violations of their constitutional rights that were not, and could not have been, raised on direct review. *People v. Allen*, 2015 IL 113135, ¶ 20. Proceedings under the Act occur in three stages. *Id.* ¶ 21. At the first stage, the trial court considers the petition without input from the parties and may only dismiss where it is "frivolous or patently without merit." *Id.* ¶ 25. A frivolous petition relies on " 'an indisputably meritless legal theory or a fanciful factual allegation.' " *Id.* (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). Our supreme court has defined meritless legal theories as those

"completely contradicted by the record" and fanciful factual allegations as based on "fantastic or delusional" scenarios. (Internal quotation marks omitted.) *Id.* First-stage pleading standards are "forgiving." *Id.* ¶ 43. The Act intends that most petitions be tested through the later adversarial stages. See *id.* ¶ 25 (there are "limited number of reasons for summary dismissal"); see also *Hodges*, 234 Ill. 2d at 9 (at first stage "threshold for survival is low").

¶ 24 When we review petitions dismissed at the first stage, we take the petitioner's allegations as true and construe them liberally. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). The petition need only allege a "limited amount of detail" (*id.*), "capable of independent corroboration." (Internal quotation marks omitted.) *Allen*, 2015 IL 113135, ¶ 24. We review first-stage dismissal *de novo*. *Id.* ¶ 19.

¶ 25 The familiar two prong analysis from *Strickland v. Washington*, 466 U.S. 668 (1984), governs Hayes's claim. See *People v. Utley*, 2019 IL App (1st) 152112, ¶ 36. To demonstrate ineffective assistance, defendants must show (i) their counsel's performance was deficient and (ii) any deficient performance prejudiced them. *Id.* We find Hayes's pleadings at least arguably satisfied both prongs of the *Strickland* test.

¶ 26                                                   Arguable Deficiency

¶ 27 Trial counsel performs deficiently when "actions or inactions constituted error(s) so serious as to fall below an objective standard of reasonableness under prevailing professional norms." (Internal quotation marks omitted.) *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 76. Though not controlling, our supreme court has acknowledged the American Bar Association Standards for Criminal Justice as instructive to understanding the contours of trial counsel's obligations. *People v. Palmer*, 162 Ill. 2d 465, 477-78 (1994). Relevant here, the ABA urges defense counsel to

investigate and consider "potential avenues of impeachment of prosecution witnesses" and "determine whether the client's interests would be served by engaging *** forensic *** or other experts, or other professional witnesses." ABA Standards for Criminal Justice § 4-4.1(c), (d) (4th ed. 2015). We have similarly recognized that counsel may be ineffective for failing to "present available evidence to support a defense." *People v. York*, 312 Ill. App. 3d 434, 437 (2000).

¶ 28 Of course, as the State argues, decisions determining which witnesses to call and which evidence to present ultimately belong with counsel, and we typically consider them matters of trial strategy. *Id.* But Hayes's burden to address a claim of trial strategy does not attach until the second stage of postconviction proceedings. *People v. Tate*, 2012 IL 112214, ¶ 22 ("State's strategy argument [about counsel's failure to call certain witnesses] is inappropriate for the first stage."). The State acknowledges *Tate* but argues our decision in *People v. Viramontes*, 2017 IL App (1st) 160984, limited *Tate* to its facts.

¶ 29 Even accepting the State's gloss on *Viramontes* as limiting, we would distinguish it on two grounds: (i) trial counsel had already elicited the expert testimony the defendant proposed to introduce through cross-examination of the State's expert at trial, and (ii) Hayes's pleadings, taken as true and liberally construed, show counsel failed to conduct a meaningful investigation into an eyewitness identification expert at all.

¶ 30 The State, in *Viramontes*, presented expert testimony that the victim's head injuries could only have been caused by "severe force" and that the victim's drug use did not contribute to her death. *Viramontes*, 2016 IL App (1st) 160984, ¶ 22. The expert who performed the victim's autopsy similarly concluded that the force applied to the victim "had to be significant" and "a drug overdose did not contribute to or cause" the bleeding in the victim's brain that led to death. *Id.*

¶ 24. In an affidavit to his postconviction petition, the defendant's proposed expert witness averred that "the testimony that it would take a 'relatively significant force' to inflict the [victim's] injuries *** was 'not necessarily true.' " *Id.* ¶ 29. According to the defendant's expert, the victim's internal brain bleeding could have been caused by "mild" injury, and cocaine use could have contributed to the injury as well as the victim's cancer diagnosis. *Id.* ¶¶ 29-30.

¶ 31    Our analysis of trial counsel's deficiency focused on trial counsel's cross-examination of the State's experts. *Id.* ¶ 52. Counsel elicited testimony, for example, that cocaine can cause the kind of brain bleeding the victim suffered and her injuries, including some bruising, could have been caused by her cancer. *Id.* Defendant's counsel, then, pointed to evidence supporting the argument that the victim "had not been severely beaten and that cocaine significantly contributed to her death." *Id.*

¶ 32    As we pointed out in Hayes's direct appeal, no expert in eyewitness identification testified to support the witnesses' focus on the shooter's weapon or that the jury should not be so confident in the witnesses' certainty. See *Hayes*, 2017 IL App (1st) 153213-U, ¶¶ 42, 44. Unlike the cross-examination in *Viramontes*, which allowed defendant's counsel to present an alternative argument supported by evidence, nothing in the trial record here would have given trial counsel the ability to argue weapon focus or the fallibility of eyewitness certainty.

¶ 33    Hayes's allegations also distinguish his claim from the defendant's claim in *Viramontes*. After reciting several studies and cases describing the fallibility of eyewitness testimony, Hayes alleged "this knowledge was available to counsels, trial and appellate" but "counsel [did not] seek expert testimony." We focus mainly on Hayes's allegation that trial counsel did not even "seek" an expert on eyewitness identifications. In *Viramontes*, there was nothing to "seek." Counsel knew

the State would call its own expert and ably cross-examined that expert to elicit the same information counsel could have elicited through a defense expert. *Viramontes*, 2016 IL App (1st) 160984, ¶ 52. Hayes's counsel had no comparable opportunity for meaningful adversarial testing because neither party put forward experts.

¶ 34 The specificity in Hayes's allegations also distinguish his ineffectiveness claim from that raised on direct appeal in *People v. Macklin*, 2019 IL App (1st) 161165, on which the State also relies. There, the court rejected reliance on *Lerma* because it had not been decided at the time of the defendant's trial, meaning counsel could not have been incompetent for "failing to correctly predict that the law will change." *Id.* ¶ 38. Hayes's jury trial also took place before *Lerma*. Hayes alleges, however, that counsel knew about the law and science surrounding expert identification testimony, so the court's concern in *Macklin* is not present. Because *Macklin* was bound by the record and not the allegations in a postconviction petition, we doubt the majority's analysis will ever be much help when considering petitions challenging the failure to present eyewitness experts. Had we any doubt, the State concedes in its brief that "ample authority" existed supporting an argument for the admission of expert testimony about misidentification at the time of Hayes's trial.

¶ 35 We agree with the State that trial counsel need not introduce (or attempt to introduce) expert testimony about eyewitness identification in every case involving eyewitnesses. See *Lerma*, 2016 IL 118496, ¶ 25 (finding abuse of discretion in excluding eyewitness expert "given the specific facts presented"). Nothing here should be read to limit a trial court's discretion to consider the relevance of expert testimony given the facts in front of it. For example, expert testimony may not be as valuable where the witness knows the suspect. See *id* ¶¶ 26-31. But we find it arguable

that "this is the type of case for which expert eyewitness testimony is both relevant and appropriate." *Id.* ¶ 26. Like *Lerma*, we have no physical evidence linking Hayes to the offense, and he made no admissions. *Id.* Also like *Lerma*, several factors could have contributed to the unreliability of eyewitness testimony, including "the stress of the event itself, the use and presence of a weapon *** [and] nighttime viewing." *Id.*

¶ 36     To the extent Hayes needs additional information to establish the relevance of expert eyewitness testimony more concretely, that raises a question for later postconviction review. The State correctly states that the decision in *Lerma* contemplates the exercise of the trial court's discretion in admitting testimony from an expert in eyewitness identification. But in the postconviction context, we cannot see how, on first-stage review, a trial court could say for sure how the court's discretion ought to have been exercised without further factual development as to the expert's proposed testimony. For our purposes, it is enough that the record does not "completely contradict" Hayes's claim that an expert's testimony would have been relevant and admissible. See *Hodges*, 234 Ill. 2d at 16 (defining first-stage standard).

¶ 37     Accepting his allegations as true, we agree with Hayes—counsel should have investigated and sought admission of an expert witness on eyewitness identification given the facts. At this early stage, we cannot characterize Hayes's claims as either "indisputably meritless" or based on "fanciful factual allegations." The petition warrants second-stage proceedings under the Act.

¶ 38                                        Arguable Prejudice

¶ 39     We also agree that Hayes has sufficiently alleged prejudice from counsel's at least arguably deficient performance. To show prejudice, a defendant must demonstrate a reasonable probability that the result of the trial would have been different had counsel performed adequately, meaning

"a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *People v. Gonzalez*, 385 Ill. App. 3d 15, 21 (2008). This imposes a low burden. See *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45 ("prejudice may be found even when the chance that minimally competent counsel would have won an acquittal is significantly less than 50 percent as long as a verdict of not guilty would be reasonable" (internal quotation marks omitted)). In the context of first-stage postconviction proceedings, it need only be arguable that, had counsel performed adequately, a significantly less than 50% chance exists of a different outcome. *Hodges*, 234 Ill. 2d at 16 (first-stage standard); *Lucious*, 2016 IL App (1st) 141127, ¶ 45 (probability of prejudice).

¶ 40　　We substantially, even if inadvertently, previewed our prejudice analysis in our order from Hayes's direct appeal. *Hayes*, 2017 IL App (1st) 153213-U. We acknowledged that science may "call into question the reliability of eyewitness identifications" but relied on the five factors from *Neil v. Biggers*, 409 U.S. 188 (1972), because "Hayes did not attempt to call an expert witness to testify regarding the psychology of eyewitness identifications." *Hayes*, 2017 IL App (1st) 153213-U, ¶ 44. Hayes, now supported by his citations of cases and secondary authority, draws our attention specifically to weapon focus and the weak correlation between witness certainty and accuracy.

¶ 41　　Hayes's petition cites the seminal case, *State v. Henderson*, 27 A.3d 872 (N.J. 2011), in support of his claim of prejudice. The court analyzed several studies and found that weapon focus "can impair a witness' ability to make a reliable identification." *Id.* at 905. The court noted that "weapon-absent" conditions led to "significantly more accurate descriptions of the perpetrator"

and weapon focus can be exaggerated by an offense of short duration where the witness does not have a chance to acclimate to the presence of weapon.

¶ 42     When the shooting happened, Brookshire observed the offender for five seconds but also noticed a gun, meaning at least part of that five seconds was dedicated to perceiving the gun. Similarly, Singleton also noticed a gun after getting a direct look at the offender for about six seconds. Two other witnesses looked at the gun long enough to learn details about it. Neely, who observed the offender for less than a second, described the gun as having "a clip that was hanging out of it." Reed, who only saw the offender's face for four or five seconds, could tell the gun was "semi-automatic." This testimony at least arguably fits within *Henderson*'s description of weapon focus: "when the interaction is brief, the presence of a visible weapon can affect the reliability of an identification and the accuracy of a witness's description of the perpetrator." *Id.*

¶ 43     The State resists this conclusion, arguing that weapon focus does not apply because these witnesses were never "confronted by a gun" or "in physical danger." The State cites no authority, legal or scientific, supporting this limit on the scope of weapon focus. But we have found cases, contrary to the State's claim "no such authority exists," explaining that a witness does not have to be directly threatened with a weapon for weapon focus to damage their reliability. See *State v. Martinez*, 2021-NMSC-002, ¶ 51, 478 P.3d 880 (corollary to weapon focus is "witness distraction resulting from the presence of *any* unusual or out-of-place object, *whether dangerous or not*" (emphasis added)); *Young v. State*, 374 P.3d 395, 422-23 (Alaska 2016) (citing studies showing that object need only be "incongruous—such as a stalk of celery" for witness to suffer same effect as weapon focus). In short, the State cannot defeat Hayes's claim of weapon focus, especially at this early stage of proceedings, just because some witnesses were not directly in harm's way.

¶ 44     As we mentioned on direct appeal, none of the witnesses expressed uncertainty about their identifications. *Hayes*, 2017 IL App (1st) 153213-U, ¶¶ 44, 46. But *Henderson*, on which Hayes relied in his petition, calls that aspect of witness testimony into question too. Witness confidence and accuracy may not be related. *Henderson*, 27 A.3d at 889. By the time witnesses testify, they may be mistaken, all the while "exud[ing] supreme confidence." *Id.* As a result, "there is almost nothing more convincing [to a jury] than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!' " (Emphasis omitted.) *Id.* (quoting *Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (Brennan, J. dissenting)). Essentially, use of an expert presents the only way to inform a jury of this weak correlation: "[j]urors *** tend to be unaware of the generally weak relationship between confidence and accuracy, and are also unaware of how susceptible witness certainty is to manipulation by suggestive procedures or confirming feedback." *State v. Lawson*, 291 P.3d 673, 705 (Or. 2012).

¶ 45     We turn then to the State's primary objection to further postconviction proceedings—its claim that the remaining eyewitness testimony adequately eliminates prejudice from the lack of expert testimony. We disagree. Even though the testimony was sufficient to affirm Hayes's conviction, it suffered substantial weaknesses and competed with three alibi witnesses.

¶ 46     Because Hayes asserted an alibi defense and had witnesses of his own, we find helpful the analogy our supreme court made between *Strickland*'s prejudice prong and the first prong of plain error. See *People v. White*, 2011 IL 109689, ¶ 133. Both analyses are "evidence-dependent and result-oriented." *Id.* ¶ 134. We typically find an error prejudicial in the plain error context where the jury heard conflicting narratives neither fanciful nor corroborated by physical evidence. *People v. Sebby*, 2017 IL 119445, ¶¶ 61-63.

¶ 47   The State repeats a refrain that the eyewitnesses corroborated each other. For the reasons we set out in our summary of the trial testimony (*supra* ¶¶ 6-10), the State overplays its hand. Most witnesses viewed the offender for seconds, at night, from variable distances, and at variable angles. The only physical characteristic the witnesses described consistently happened to be general—the offender's complexion. And, for the reasons already outlined, an expert could explain significant weapon focus and overconfident identifications. The court's admonishment in *Sebby* is apt: we are not concerned with whether the evidence is sufficient but with whether the sufficient evidence insulates the jury's verdict from counsel's error. *Cf. Sebby*, 2017 IL 119445, ¶ 60. To that end, the State ignores Hayes's trial testimony, corroborated by two other witnesses, that he was with them elsewhere and not at the scene of the shooting at the time it took place. Nothing is fanciful about Hayes's presence at a party for several hours on the night of the shooting. See *id.* ¶ 61.

¶ 48   At oral argument, the State repeatedly referred to Hayes's burden as "demonstrate[ing]" that counsel's performance prejudiced him. In doing so, the State places too high a burden on Hayes. As mentioned, allegations and not proof (or "demonstrations") govern first-stage proceedings. *Allen*, 2015 IL 113135, ¶ 25 (court to take allegations in petition as true). Only at later stages does a petitioner demonstrate or make a "substantial showing of" a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002).

¶ 49   The State, again at oral argument, emphasized the possibility that a counter-expert could have been called to rebut Hayes's counsel's expert. Perhaps. See *People v. Jaimes*, 2021 IL App (2d) 190241-U, ¶ 33. But considerations of both trial strategy (*id.*) and credibility are left to the later stages.

¶ 50    Taking the competing narratives, together with the weaknesses in the eyewitness testimony and adding the value an identification expert, at least arguably, could have added to Hayes's defense, we find it at least arguable that Hayes was prejudiced by counsel's at least arguably deficient performance. Ultimately, it would be unfair to suggest on direct appeal that one of the deficiencies in Hayes's challenge to the sufficiency of the evidence against him was the lack of expert testimony and then, on postconviction review, hold that he was not at least *arguably* prejudiced by counsel's failure to call the type of expert we identified. Accordingly, Hayes has satisfied the low pleading bar justifying further proceedings.

¶ 51                                    On Remand

¶ 52    We exercise our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) to assign Hayes's case to a different judge on remand. See *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 55 (authority under Rule 366(a)(5) includes authority to reassign to different judge on remand). No party has alleged judicial bias (see, *e.g.*, *Eychaner v. Gross*, 202 Ill. 2d 228, 279-80 (2002)), and we do not find any. But the judge ruling on Hayes's petition at the first stage appears to have prejudged issues that should only arise at the second stage. In dismissing Hayes's claim that trial counsel was ineffective, the court relied almost exclusively on its deference to counsel's possible strategic reasons for not calling an expert in eyewitness identifications. As we have stressed in rejecting the State's similar argument, evaluating counsel's strategy decisions requires fact-finding at later stages of postconviction proceedings. *Tate*, 2012 IL 112214, ¶ 22; see *People v. Serrano*, 2016 IL App (1st) 133493,¶ 45 (court's misapplication of proper standard valid basis for reassigning case on remand).

¶ 53    In short, the trial court did not take Hayes's allegations as true—that trial counsel knew of the legal and scientific support for an eyewitness expert and did nothing. Thus, out of an abundance of caution and to avoid even the appearance of prejudgment, we order the case reassigned to a different judge for further proceedings consistent with the Act.

¶ 54    Reversed and remanded with directions.

---

**No. 1-19-0881**

---

| | |
|---|---|
| **Cite as:** | *People v. Hayes*, 2021 IL App (1st) 190881 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CR-17957; the Hon. Stanley J. Sacks, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Christopher Kopacz, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Christine Cook, Assistant State's Attorneys, of counsel), for the People. |