2025 IL App (1st) 241180

FOURTH DIVISION
Opinion filed: March 26, 2026

No. 1-24-1180

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 16534 |
| | ) | |
| DEMARIUS BRIDGES, | ) | Honorable |
| | ) | Maria Kuriakos Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court, with opinion.
Presiding Justice Navarro and Justice Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Demarius Bridges appeals the circuit court's second-stage dismissal of his petition for postconviction relief filed under the Post-Conviction Hearing Act ("Act") (725 ILCS 5/122-1 *et seq.* (West 2020)). He contends that the court erred in determining that his claim that trial counsel rendered ineffective assistance by failing to retain an expert witness on the reliability of eyewitness identifications was both forfeited and meritless. Although we find that defendant did not forfeit his claim by failing to raise it on direct appeal, we affirm the dismissal of defendant's petition on the merits.

¶ 2 Following a jury trial in June 2015, defendant was convicted of the first degree murder of Keith Slugg and the attempted first degree murder of Kimberly Harris and sentenced to consecutive prison terms of 55 years and 35 years, respectively. The evidence at trial showed that, on August 28, 2011, at approximately 3:55 a.m., Harris and her boyfriend, Slugg, were engaged in sexual intercourse in the driver's seat of Slugg's parked car when shots rang out at a rapid pace. Slugg was sitting in the driver's seat and Harris was on his lap facing the rear of the car. Harris looked up and saw a man she identified as defendant holding a gun near the rear passenger window of the car. The shooter was not wearing a mask and Harris had a clear and unobstructed view of his face. Harris attempted to take cover in the front passenger footwell, but her foot became wedged between Slugg and the steering wheel. After a pause in the shooting, Harris then heard a second gun begin firing at a slower pace. Slugg was fatally shot 3 times, and Harris was shot 15 times. When the shooting stopped, Harris used her foot to honk the horn to attract attention.

¶ 3 When police and paramedics arrived, Harris immediately and repeatedly told them that the shooter was "Demarius," whose nickname was "Debo." When asked if Demarius was from the ABLA housing complex near the location of the shooting, Harris said "yes." Harris told one officer that her view of defendant was "clear and unobstructed" and he was approximately four to five feet away. Harris subsequently identified defendant as the shooter in a photo array. She told a detective several days after the shooting that she "immediately" recognized defendant as the shooter and had known him for 15 years. A week later, Harris recounted her memory of the shooting in a video recorded statement. She then provided the same information in her testimony in front of the grand jury that indicted defendant. She testified before the grand jury that she could see defendant clearly from outside the rear passenger window because of the lights in the parking

lot. She made nine separate statements to various individuals and consistently identified defendant as the shooter. Six months later, based on an anonymous tip, police recovered a gun owned by defendant's brother, Terry Bridges. Forensic analysis revealed that this gun was one of three guns used in the shooting of Harris and Slugg.

¶ 4    Prior to defendant's trial, Harris was shot and killed. Defendant, his brother Terry, and a third individual, Terrell Lewis, were charged with her murder. The State alleged that, while in jail, defendant had arranged for Terry to lure Harris to a meeting with the offer of money in exchange for not testifying against defendant and that Lewis killed her during that meeting. Although defendant was acquitted of Harris' murder in a separate bench trial, the circuit court in the present case found that, through evidence of Terry's and Lewis' visits to defendant in jail, the State had shown by a preponderance of the evidence that defendant had acted to procure Harris' absence from trial. The court further found that Harris' statements identifying defendant were all admissible either as dying declarations, excited utterances, statements made in the course of an ongoing emergency, or under the doctrine of forfeiture by wrongdoing.

¶ 5    The postconviction claim at issue in this appeal concerns the circumstances affecting Harris' identification of defendant and defense counsel's efforts to challenge that identification. Relevant to those issues, at trial, Officer Homero Garza testified that the area around the crime scene "was well lit because there was a light fixture coming from Newberry School. There was another one just kitty corner from the actual position from the vehicle from a residential [*sic*], there was a spotlight, and then there was more lamp posts just to the west." The State asked Garza whether he could clearly see shell casings on the ground, and Garza confirmed that he could. On cross-examination, defense counsel showed Garza photos of the scene and asked him to circle

particular lights and to approximate their distance from the scene, which Garza estimated to be "about 300 feet" and about "two car lengths away." Defense counsel then asked Garza whether there was light "under where the car was parked," and Garza responded, "[t]hat I recall, no." Counsel showed Garza another photo taken near the time of the shooting and asked Garza to confirm that "this area is dark where the car is parked," and Garza agreed that it was. Paramedic Katrina Basic testified that the lighting at the scene "was dim, but you could see." She added that "[i]t was like a gray haze, but you could see clearly." She also testified that she heard Harris identify defendant as the shooter several times.

¶ 6    Defense counsel called defendant's mother, Sharnetta Dodson, to testify about the similarity in the appearances of defendant and his brother Terry. Dodson testified that defendant and his brother were mistaken for one another "all the time." She explained that Terry was "a little taller" than defendant, but they both were a similar weight and had similar complexions, similar facial features, and the same low hairstyle. On cross-examination, the State played a recording of a phone call between Dodson and defendant that took place while defendant was in jail. Dodson acknowledged that, during the call, they discussed the fact that Jonell Reed, defendant's girlfriend at the time of the shooting, would testify for the defense. Dodson further admitted that, during the call, she said Reed was "good to go." Dodson testified that by "good to go," she meant only that Reed was "going to be a witness." She claimed not to know the substance of Reed's testimony.

¶ 7    Defendant testified and denied shooting Harris or Slugg. He testified that on the night of the shooting, he was at his mother's house from approximately 8:00 p.m. to 11:00 p.m. He then went home, at which point he got into an argument with Reed, had dinner, and remained home the rest of the evening. Defendant claimed that he "knew of" Harris and had seen her at parties and

events, but had never been formally introduced. However, he admitted that he had spoken to her. He also testified that people called him "Debo" and Harris would have known that nickname. He likewise stated that he "knew of" Slugg, but also that he did not know him and "[r]arely or never" saw him around. Defendant also testified that his brother was taller than he was, weighed about 20 to 30 pounds more than he did, and did not look exactly like him.

¶ 8 Reed testified that on August 28, 2011, she was dating and living with defendant. She worked in the morning and then spent the afternoon and evening cooking at home. Reed went to sleep around 9:00 p.m. and woke up around 12:30 a.m. when defendant came home. She made him a plate of food, they talked, and she fell asleep. On cross-examination, Reed admitted that she rode to court that day with defendant's mother and had visited defendant in jail numerous times, including as recently as a week before trial. She further testified that she did not tell anybody that defendant was with her at the time of the shooting until she spoke with defendant's attorney a week or two prior to trial.

¶ 9 The jury convicted defendant of first degree murder and attempted first degree murder. On direct appeal, defendant challenged only the trial court's rulings regarding the admissibility of certain testimonial hearsay statements made by Harris and Terry. See *People v. Bridges*, 2019 IL App (1st) 152604-U, ¶¶ 57-58. This court rejected his arguments and affirmed his convictions and sentences. See *id.* ¶ 104.

¶ 10 In 2021, defendant filed a petition for postconviction relief through counsel in which he raised multiple claims for relief. He raises only one of those claims in this appeal: that trial counsel rendered ineffective assistance by failing to retain an expert witness on the unreliability of eyewitness identifications. For support, defendant attached a report from Dr. Geoffrey R. Loftus,

Emeritus Professor of Psychology at the University of Washington, whose expertise was in human perception and memory. Dr. Loftus was hired by defendant's postconviction counsel, and he evaluated defendant's case and prepared his report in 2021, six years after defendant's trial.

¶ 11     Dr. Loftus stated that if he had been called to testify at defendant's trial, he would not have provided an opinion on whether Harris' identification was correct, but would have testified about a variety of factors that might affect the reliability of a witness' identification of a perpetrator, including that a witness will often erroneously identify a stranger as someone they know, low lighting inhibits a witness' ability to detect color and the type of fine detail needed to encode a person's appearance, and a witness such as Harris who is under attack often allocates minimal attention to observing the appearance of her assailant. Further, a witness who is confronted with a weapon tends to focus on the weapon and devote less attention to other matters. Due to these and other factors, Dr. Loftus would have explained that, "of the total duration comprising some event, only a fraction of that duration is available to the witness for memorizing what will later be relevant (usually the perpetrator's appearance)." Dr. Loftus also would have explained how seeing pictures of defendant in photo lineups would have allowed Harris to "solidify her belief" and strengthen her memory that defendant was the shooter.

¶ 12     When the circuit court failed to rule on defendant's petition within 90 days, it was advanced to the second stage. The State filed a motion to dismiss, in which it asserted that defendant had forfeited his ineffective assistance claim because he could have raised the issue on direct appeal. In response, defendant submitted an August 25, 2023, affidavit in which he averred, in relevant part:

"I approached counsel with the idea of securing the services of an eyewitness expert in aid of my defense at trial. In response counsel communicated that he would look into the matter. I made sure to inquire as to the status of counsel's investigation of that matter every time I had a court appearance. For several months counsel communicated that he had not gotten around to exploring the need for an expert on the subject of eyewitness identification. A few months before trial counsel communicated to me that he would not be consulting an expert because it was his belief that an expert would be of no use for a case like mine, where the witness claims to know me. In response I told counsel that the witness did not know me but rather knew of me which is a distinct difference. After this back and forth exchange, it was clear to me that he would not be pursuing the matter any further."

¶ 13    Following a hearing, the court granted the State's motion to dismiss defendant's postconviction petition, finding that defendant's claim of ineffective assistance of trial counsel was meritless because trial counsel made a strategic decision not to call an expert on eyewitness identifications and that the claim was forfeited because the issue was apparent on the face of the record and defendant could have raised it on direct appeal. This appeal follows.

¶ 14    Defendant argues that he made a substantial showing that trial counsel's failure to retain an expert witness amounted to ineffective assistance of counsel. The State responds that defendant forfeited this claim because counsel's ineffectiveness was apparent from the face of the trial record and he could have raised the issue on direct appeal and, even if not forfeited, the claim fails on its merits. We first find that defendant did not forfeit his postconviction claim by failing to raise the issue on direct appeal. However, we conclude that defendant failed to make the necessary showing

of ineffective assistance to justify a third-stage proceeding and the circuit court properly dismissed his petition.

¶ 15    The Act provides a three-stage process through which "a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights." *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006) (citing *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005)). When a petition is not dismissed with 90 days of being filed, it is advanced to the second stage. *Id.* at 472. At that point, the State may file a motion to dismiss. *Id.* At the second stage, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Id.* at 473 (citing *People v. Coleman*, 206 Ill. 2d 261, 277 (2002)). "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *Id.* (citing *People v. Childress*, 191 Ill. 2d 168, 174 (2000)).

¶ 16    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Id.* at 687. To establish deficiency, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 17    We first must determine whether defendant's failure to raise his ineffective assistance argument on direct appeal results in forfeiture of the claim. "The purpose of a postconviction

proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22 (citing *People v. Harris*, 206 Ill. 2d 1, 12 (2002)). "[I]ssues that could have been raised on direct appeal, but were not, are forfeited." *Id.* (citing *People v. Ligon*, 239 Ill. 2d 94, 103 (2010)). However, the forfeiture doctrine is "relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record." *Id.* (citing *People v. Williams*, 209 Ill. 2d 227, 233 (2004)).

¶ 18    The State argues that the basis for defendant's ineffective assistance claim was apparent on the face of the record at the time of his direct appeal and defendant therefore forfeited the claim by failing to raise it then. Defendant counters that the claim could not have been raised on direct appeal because it relies on Dr. Loftus' expert report and scientific studies that were not present in the record on direct appeal.

¶ 19    The appellate court is split as to whether this type of claim can, and therefore must, be raised on direct appeal. The cases providing the primary support for the State's position generally hold that defendants alleging ineffective assistance concerning the failure to present expert testimony on eyewitness identifications must raise such a claim on direct appeal because counsel's ineffectiveness is typically apparent on the face of the record and this claim has been available since *People v. Enis*, 139 Ill. 2d 264, 287-90 (1990). See *People v. Navarro*, 2021 IL App (1st) 190483, ¶ 13 ("*Enis*, which was decided in 1990, held that expert testimony on the issue of eyewitness identification was admissible in certain circumstances. Thus, the claim that the defendant's counsel was ineffective for failing to offer expert testimony on the subject of

eyewitness identification was available to the defendant at the time of direct appeal in 2007, and he should, and could, have raised the issue in that appeal."); *People v. French*, 2022 IL App (1st) 200805-U, ¶¶ 64-65 (citing and agreeing with *Navarro*); *People v. Hernandez*, 2021 IL App (1st) 192297-U, ¶ 32 (same); see also *People v. Boone*, 2023 IL App (1st) 220433-U, ¶ 54; *People v. Riley-Palmer*, 2022 IL App (1st) 210454-U, ¶ 34; *People v. Burke*, 2021 IL App (1st) 200250-U, ¶ 26.

¶ 20    However, noticeably absent from these cases is any consideration of the practical requirements for raising this type of claim on direct appeal, including the fact that such a claim usually relies on matters outside the trial record. Indeed, while it is true that *Enis* provided a basis for a claim that counsel might perform deficiently by failing to call an expert on eyewitness identifications, the general availability of such a claim does not equate to defendants having a practical and meaningful ability to present it on direct appeal.

¶ 21    As a general matter, an "ineffective assistance claim based on what the record discloses counsel did, in fact, do is subject to the usual procedural default rule." *People v. Tate*, 2012 IL 112214, ¶ 14. However, "a default may not preclude an ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense." *People v. West*, 187 Ill. 2d 418, 427 (1999) (holding that defendant's postconviction claim that counsel rendered ineffective assistance by not calling a forensic expert was not forfeited because the claim did not concern something that counsel actually did that was apparent on the face of the record). This is because "a claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation." *Tate*, 2012 IL 112214, ¶ 14 (citing *People v. Erickson*, 161 Ill. 2d 82, 88 (1994)) (holding that defendant's

postconviction claim that counsel rendered ineffective assistance by failing to call four witnesses could not have been raised on direct appeal because the witnesses' affidavits were not in the record). "Procedural default does not *** preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record." *People v. Veach*, 2017 IL 120649, ¶ 47.

¶ 22    The case of *People v. Boose*, 2021 IL App (2d) 190416-U, demonstrates how the claim that defendant brings in this case could not have been adequately presented on direct appeal due to the lack of a sufficient factual record. In *Boose*, the defendant argued on direct appeal that trial counsel rendered ineffective assistance by not calling an expert witness on the reliability of eyewitness testimony. *Id.* ¶ 21. The State asserted that the issue was not reviewable because the defendant had not shown "that there is an expert available and exactly what said expert would testify about in the context of the facts and circumstances in this case." *Id.* ¶ 25. The State further argued that "the record is not developed as to whether or not an expert witness was available to the defense, why the defense did or did not choose to retain an expert if one was available and what the People might have offered in response to any proposed expert." *Id.* According to the State, the defendant's claim was "better suited to postconviction proceedings, where a factual record might be developed." *Id.*

¶ 23    This court agreed with the State and explained the numerous reasons why such a claim did not lend itself to review on direct appeal:

> "[T]here is no way for us to evaluate defendant's contention that his attorneys were ineffective for failing to present an expert to testify regarding the science of eyewitness identifications. The record does not contain an offer of proof regarding this science, let alone a basis for applying it to the facts at bar. We have no information about the identity of any expert who might have been available to the defense. We likewise have no

meaningful information about the details of any potential expert's testimony. Defendant vaguely asserts that '[t]he expert would have provided proof that eyewitnesses can be unreliable, often misidentify people when under extreme stress and would explain why this case was ripe for unreliability.' In his reply brief, defendant insinuates that an expert might have testified that [two witnesses'] identifications were confabulated. But we have no idea who this hypothetical expert is, what his or her qualifications are, or why he or she would opine that [the witnesses'] identifications were problematic." *Id.* ¶ 30.

The *Boose* court concluded that "defendant's claim of ineffective assistance in connection with the failure to present an expert is better suited for collateral proceedings, where defendant will have an opportunity to develop a factual record for his claim." *Id.* ¶ 32.

¶ 24    Similar to *Boose* is *People v. Elliott*, 2022 IL App (1st) 192294, where the defendant likewise argued on direct appeal that counsel rendered ineffective assistance by not calling an expert on eyewitness identifications. In discussing the prejudice prong of the defendant's claim, this court explained that, even though the defendant made specific allegations "that an expert would testify regarding (1) the low correlation between a witnesses' confidence in an identification and the accuracy of their identification, (2) the effect of the presence of a weapon, (3) the effect of a stressful situation, and (4) the weakness of identifying a stranger," and the defendant cited "cases that note scientific studies supporting these points," the defendant's claim was still "far too speculative to establish prejudice." *Id.* ¶¶ 48-49. This court added that, among other reasons, "such testimony is necessarily speculative," in part because "no expert testimony was proffered." *Id.* ¶ 49; see also *People v. Johnson*, 2021 IL 126291, ¶ 58 (noting that prejudice cannot be based on speculation or conjecture).

¶ 25 In postconviction proceedings, several other cases have echoed the reasoning of *Boose* and *Elliott* and held that the failure to argue on direct appeal that counsel performed deficiently by not calling an expert on eyewitness identifications does not result in forfeiture of the issue because the claim relies on matters outside the trial record that could not have been adequately presented on direct appeal. For example, in *People v. Reynolds*, 2024 IL App (1st) 221222-U, ¶ 32, this court held that the defendant "cannot succeed on this claim without evidence from the expert witness that he claims his trial counsel should have called." The *Reynolds* court observed that a claim of ineffective assistance for the failure to call a witness generally requires an affidavit from the proposed witness in order to demonstrate a substantial showing of a constitutional violation, which "is a matter outside the record on appeal and one which could not be brought on direct appeal." *Id.*

¶ 26 This court also reached the same conclusion in *People v. Porter*, 2024 IL App (1st) 231330-U, ¶ 28, observing that, "[i]f defendant raised this argument on direct appeal, his inability to establish prejudice would have been virtually assured because the record was devoid of even potential expert testimony that could have been provided at trial ***." See also *Veach*, 2017 IL 120649, ¶ 48 (explaining that reviewing courts "should carefully consider each ineffective assistance of counsel claim on a case-by-case basis" to determine whether it depends on facts not found in the record); *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶¶ 49-50 (holding that defendant had not forfeited his claim when his "postconviction petition was wholly based on information absent from the original appellate record" and explaining that, "[f]or a reviewing court to engage in a meaningful review of whether failing to call an expert witness constituted ineffective assistance of counsel, the testimony of the expert would undoubtedly prove helpful to the disposition of the claim"); *People v. Saleh*, 2020 IL App (1st) 172979, ¶ 43 (finding no forfeiture

when defendant's claim relied on documents that were not part of the record on direct appeal); *People v. Talbert*, 2023 IL App (1st) 200423-U, ¶ 50 (holding that when the trial record was "wholly silent as to the topic of any expert on eyewitness testimony *** the rule of forfeiture is inapplicable").

¶ 27 We agree with *Reynolds*, *Porter*, and *Talbert* and hold that, for the reasons set forth in *Boose* and *Elliott*, and consistent with *Pellegrini, Saleh*, and *Tate*, defendant did not forfeit this ineffective assistance of counsel claim by not raising it on direct appeal. We find these cases to be better reasoned and more consistent with Illinois law concerning claims that depend on facts outside the direct appeal record. We decline to follow *Navarro* and the cases agreeing with it as those decisions are not consistent with *Veach* and *Tate* and conflict with Illinois law precluding forfeiture when a claim relies on matters outside the trial record.

¶ 28 In the present case, defendant's claim relies on an expert witness report and defendant's affidavit that were not in the trial record. As discussed above, the absence of that report prevented defendant from raising the issue on direct appeal, which precludes a finding of forfeiture now. We will therefore consider the merits of defendant's claim.

¶ 29 Defendant argues that counsel's decision not to call an expert on eyewitness identifications was not reasonable because an expert could have greatly undermined Harris' identification, which was the primary evidence against him. Defendant also argues that counsel's failure to retain an expert should not be considered a matter of trial strategy because his affidavit shows that counsel never even investigated the possibility of hiring an expert and, therefore, never made a strategic decision not to call one to testify. The State contends that defendant's claim was properly dismissed

because trial counsel's decision not to call such an expert was a matter of trial strategy and therefore entitled to substantial deference. We agree with the State.

¶ 30　"It is well established that decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Madej*, 177 Ill. 2d 116, 148 (1997) (citing *People v. Ramey*, 152 Ill. 2d 41, 53-55 (1992)). "Such decisions have long been viewed as matters of trial strategy, which are generally immune from claims of ineffective assistance of counsel." (Citations omitted.) *Id.* "This general rule is predicated upon our recognition that the right to effective assistance of counsel refers to 'competent, not perfect representation.'" *Id.* at 149 (quoting *People v. Stewart*, 104 Ill. 2d 463, 492 (1984)). "Hence, '[m]istakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent.'" (Alteration in original.) *Id.* (quoting *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)). "The only exception to this rule is when counsel's chosen trial strategy is so unsound that 'counsel entirely fails to conduct any meaningful adversarial testing.'" *Id.* (quoting *People v. Guest*, 166 Ill. 2d 381, 394 (1995)). Additionally, "'strategic decisions may be made only after there has been a thorough investigation of law and facts relevant to plausible options.'" *People v. Upshaw*, 2017 IL App (1st) 151405, ¶ 39 (quoting *People v. Gibson*, 244 Ill. App. 3d 700, 703-04 (1993)).

¶ 31　Initially, we disagree with defendant's contention that trial counsel never investigated the possibility of hiring an expert on eyewitness identifications. In his affidavit, defendant stated that he talked to his attorney about hiring an eyewitness expert and the attorney said he would look into the matter. Defendant's attorney "communicated that he had not gotten around to exploring the need for an expert on the subject of eyewitness identification," but, a few months before trial,

"counsel communicated to [defendant] that he would not be consulting an expert because it was his belief that an expert would be of no use for a case like [his] where the witness claims to know [him]." This shows that counsel did consider retaining an expert, but made the conscious choice not to call such a witness. This was not a failure to investigate, but instead a matter of trial strategy.

¶ 32    Even if we were to find that counsel failed to investigate the possibility of retaining an expert, we would not find that it was objectively unreasonable to forgo such an investigation and call such a witness. This court recognized in *People v. Almendarez*, 2023 IL App (1st) 220314-U, ¶ 79, that the prevailing caselaw at the time of defendant's trial generally precluded the use of expert testimony on eyewitness identifications. Consequently, when considering that legal landscape, we concluded that counsel could not be faulted for not calling such an expert, and his failure to present such testimony did not fall below an objective standard of reasonableness. *Id.*; see also *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 55 (recognizing that "Illinois continues to reject, at least in practice, expert testimony on the reliability of eyewitnesses" and concluding that it was therefore "not unreasonable for defense counsel to decline to present expert testimony regarding the reliability of eyewitness identification"). As in *Almendarez* and *McGhee*, because such testimony was generally excluded at the time of defendant's trial in 2015, counsel in this case did not perform unreasonably or deficiently when he failed to present expert testimony on the reliability of eyewitness identifications.

¶ 33    Defendant cites *People v. Lerma*, 2016 IL 118496, where our supreme court held that the trial court abused its discretion in excluding a defense expert witness on the reliability of eyewitness identification based on the facts of that case. However, *Lerma* did not involve an ineffective assistance of counsel claim and does not establish that defendant's counsel was

ineffective for not calling such a witness at defendant's trial. Indeed, "this court has observed that *Lerma* does not support the conclusion that trial counsel is necessarily ineffective for not presenting eyewitness expert testimony in any case where the State relies on eyewitness identification of the defendant." *Elliott*, 2022 IL App (1st) 192294, ¶ 46 (citing *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 39). Further, "counsel's failure to call an expert witness is not *per se* ineffective assistance, even where doing so may have made the defendant's case stronger." *Id.* (citing *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005)). "Thus, even in an 'appropriate' case for expert testimony on eyewitness identification, counsel is not necessarily ineffective for choosing not to present such testimony." *Id.* Rather, "this is a matter of trial strategy, and we will only find counsel ineffective if counsel failed to subject the State's case to meaningful adversarial testing." *Id.* (citing *People v. Peterson*, 2017 IL 120331, ¶ 80, and *People v. West*, 187 Ill. 2d 418, 433 (1999)).

¶ 34    Defendant has not shown how trial counsel's chosen trial strategy was so unsound that he failed to conduct any meaningful adversarial testing of the State's case. To the contrary, counsel made a noted effort to undermine Harris' identification and the State's case from opening statements through closing arguments. Specifically, counsel cross-examined Officer Garza about the lighting conditions at the scene of the shooting and was able to establish that, while there lights nearby, the area where Slugg's car was parked was dark. Counsel also called defendant's mother to testify that defendant and his brother have similar appearances and are often confused for one another. Further, in his closing argument, counsel emphasized that it was dark at the time of the shooting, Harris saw the muzzle flash before she saw the shooter, Harris only saw the shooter for a second or two, and there was no evidence of defendant's potential motive for shooting Slugg and

Harris. Thus, our review of the record reveals that counsel's trial strategy cannot be viewed as so unsound as to lead us to believe that he did not fulfill his obligation to provide meaningful adversarial testing of the State's case. See *Madej*, 177 Ill. 2d at 149. Thus, defendant has not demonstrated that his counsel's performance was deficient.

¶ 35 Additionally, even if we assume that counsel's failure to present expert testimony on eyewitness identification amounted to deficient performance, we find that defendant has failed to demonstrate prejudice to satisfy the second prong of his ineffective assistance of counsel claim. Under that prong, defendant must show that there is a reasonable probability that the outcome of the proceeding would have been different (see *Strickland*, 466 U.S. at 694), and, as we noted earlier, at the time of defendant's trial, expert testimony on the reliability of eyewitness identifications was normally excluded. See *McGhee*, 2012 IL App (1st) 093404, ¶ 55. Before we ever consider the effect that such testimony might have had on the jury's verdict, it is not probable that such testimony would have even been admitted even if offered. See *Elliott*, 2022 IL App (1st) 192294, ¶ 39.

¶ 36 Indeed, in *Lerma*, a decision issued seven months after defendant's 2015 trial, our supreme court observed that, since its decision in *Enis* in which it "expressed skepticism and caution against the overuse" of expert testimony regarding eyewitness identifications, "the exclusion of such testimony remains the common practice in Illinois to this day." *Lerma*, 2016 IL 118496, ¶ 24. Other cases have also recognized this reality. See, *e.g.*, *McGhee*, 2012 IL App (1st) 093404, ¶ 55 (noting that "Illinois continues to reject, at least in practice, expert testimony on the reliability of eyewitnesses"); *Almendarez*, 2023 IL App (1st) 220314-U, ¶ 79 (observing that the prevailing case law at the time of the defendant's trial in 2010 cautioned against the use of expert testimony on

eyewitness identifications); *Boone*, 2023 IL App (1st) 220433-U, ¶ 64 ("Prior to *Lerma*, Illinois case law generally precluded expert testimony on the reliability of eyewitness identification."); *Burke*, 2021 IL App (1st) 200250-U, ¶ 34 ("[P]rior to *Lerma*, it was common practice in Illinois to exclude expert testimony on the reliability of eyewitness identification."); *People v. Jaimes*, 2021 IL App (2d) 190241-U, ¶ 33 (noting that, in 2012, "Illinois case law generally precluded expert testimony on the reliability of eyewitness identification"). Although *Lerma* dispelled *Enis*'s skepticism and approved of a broader use of such expert testimony, the fact remains that the legal landscape at the time of defendant's trial was not supportive of expert testimony on eyewitness identifications. "Representation based on the law prevailing at the time of trial is adequate, and counsel is not incompetent for failing to correctly predict that the law will change." *Macklin*, 2019 IL App (1st) 161165, ¶ 38. Thus, we find that defendant has not established the prejudice prong of his ineffective assistance of counsel claim.

¶ 37    Defendant argues that it does not matter that his trial occurred before *Lerma* because there was sufficient scientific authority available at the time that counsel could have cited in seeking to have expert testimony admitted. For support, he cites two cases. The first is *People v. Hayes*, 2021 IL App (1st) 190881, *vacated in part*, 187 N.E.3d 725, where this court held that the defendant sufficiently alleged, at the first stage of postconviction proceedings, that trial counsel was arguably deficient for failing to investigate the possibility of presenting expert testimony on eyewitness identifications. In reaching that conclusion, this court observed that, although *Lerma* had not yet been decided at the time of the defendant's trial, "'ample authority' existed supporting an argument for the admission of expert testimony about misidentification." *Id.* ¶ 34. Defendant's second case is *People v. Porter*, 2024 IL App (1st) 231330-U, which is similar to *Hayes*. There, this court relied

on *Hayes* to conclude that the defendant had likewise adequately alleged, at the first stage of postconviction proceedings, that counsel rendered ineffective assistance by failing to call an eyewitness identification expert based on the unique facts of that case. *Id.* ¶ 42.

¶ 38 We find *Hayes* and *Porter* distinguishable. First, those decisions did not address or discuss the fact that, at that time, Illinois trial courts generally rejected expert testimony on eyewitness identifications, and they did not evaluate such an argument's likelihood of success given that landscape. Instead, they simply focused on whether counsel could have made an argument in favor of the admission of expert testimony. Second, those decisions concerned the first stage of postconviction proceedings, where the court does not yet consider whether counsel's actions may have been strategic (see *Hayes*, 2021 IL App (1st) 190881, ¶ 23; *Porter*, 2024 IL App (1st) 231330-U, ¶ 25) and where the defendant is held to a much lower standard of proof and merely needs to show that his claim is arguable (see *Hayes*, 2021 IL App (1st) 190881, ¶ 23; see also *People v. Hodges*, 234 Ill. 2d 1, 16 (2009) (holding that a petition may only be dismissed at the first stage if it "has no arguable basis either in law or in fact," meaning it "is based on an indisputably meritless legal theory or a fanciful factual allegation"). *Hayes* and *Porter* are therefore not instructive here.

¶ 39 Therefore, we conclude that defendant failed to demonstrate either prong of his ineffective assistance of counsel claim. The dismissal of his postconviction petition was not erroneous and is affirmed.

¶ 40 Affirmed.